# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIENGKHAM CHAOPRASRIHOMKHAO, | Case No. 1:20-cv-00910-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I.  INTRODUCTION

Plaintiff Giengkham Chaoprasrihomkhao ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").  The "Notice of New Authority" filed by Plaintiff, which notifies the Court of the publication of the recent Supreme Court case *Collins v. Yellen*, 141 S.Ct. 1761, 1783–84 (2021) (Doc. 18), does not change this result. *See Collins*, 141 S.Ct. at 1787 n.21 ("Amicus warns that if the Court holds that the Recovery Act's removal restriction violates the Constitution, the decision will "call into question many other aspects of the Federal Government." ***Amicus points to the Social Security Administration, the Office of Special Counsel, the Comptroller, "multi-member agencies for which the chair is nominated by the President and confirmed by the Senate to a fixed term," and the Civil Service***.  ***None of these agencies is before us, and we do not comment on the constitutionality of any removal restriction that applies to their officers***.")). (emphasis added).

his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   BACKGROUND

Plaintiff was born on May 5, 1965, is illiterate, completed the sixth grade in Laos, and previously worked as an apartment manager from 1999 to 2009. (Administrative Record ("AR") 31, 34, 38, 48, 55, 64, 66, 74, 76, 84, 148, 173, 177, 179, 196, 209, 212, 230, 356, 361, 372, 392, 361.) Plaintiff filed claims for DIB and SSI payments on January 28, 2013 and April 2, 2013, respectively, initially alleging he became disabled on August 25, 1996, due to digestive system problems, high cholesterol, and fatigue. (AR 48, 57, 66, 67, 76, 77, 88, 91, 96, 154, 173, 174, 204, 350.) He thereafter amended his alleged onset date to September 23, 2009. (AR 173, 178, 230, 350, 353, 356, 406.)

Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on June 19, 2015, finding Plaintiff not disabled. (AR 14–45.) Plaintiff appealed the decision to the district court, who, on January 3, 2018, remanded the case for further proceedings to resolve a conflict between the Vocational Expert (VE)'s testimony and the language levels required under the Dictionary of Occupational Titles (DOT). (AR 451–59.) Upon remand, the Appeals Council directed the assigned ALJ to determine whether Plaintiff was able to perform his past relevant work as actually or generally performed. (AR 350.) The ALJ thereafter conducted two hearings and issued a new written decision once again finding Plaintiff not disabled.

**A.   Relevant Evidence of Record[3]**

    **1.   Medical Evidence**

In December 2012, Plaintiff reported he experienced nausea and/or vomiting every day for 10 years, and heartburn and difficulty swallowing and/or eating every day for one year. (AR 242.) Plaintiff underwent an esophagogastroduodenoscopy with small bowel, gastric, and

---

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 10.)

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

gastroesophageal junction biopsies in January 2013. (AR 240–41.) Esophagus examination showed dilated tortuous esophagus with elevated pressure at gastroesophageal junction. (AR 241.) Stomach examination including retroflex examination showed mild gastritis throughout the stomach. (AR 241.) Duodenal examination up to the second part showed multiple 3-4 mm clean-based ulcers at the duodenal bulb. (AR 241.) Pathology results revealed historically unremarkable small bowel biopsy; a gastric biopsy with minimal chronic gastritis; and a gastro-esophageal junction biopsy with reflux changes of squamous mucosa. (AR 248.) Following the esophagogastroduodenoscopy, Plaintiff was recommended to undergo a motility study and esophagram and to take proton-pump inhibitor medication. (AR 241.) Plaintiff reported he had trouble swallowing for "more than 10 years" in February 2013. (AR 249.) In February and April 2013, surgery was recommended to correct Plaintiff's known esophageal obstruction, but he declined surgery due to "fear." (AR 249, 257, 305.)

In October 2013, Plaintiff presented to Vang Moua, P.A. of North Marks Medical Clinic to establish care for his history of difficulty swallowing. (AR 307–10.) He reported stopping seeing his previous doctor because he "would not sign his disability paper." (AR 309.) His refusal to undergo surgery was documented. (AR 309.) Plaintiff's examination was normal except for localized tenderness at the epigastric region. (AR 309.)

In March 2015, Plaintiff presented for a routine follow-up appointment with P.A. Moua. (AR 312–14.) He reported compliance with medications with relief but still difficulties swallowing. (AR 313.) Upon examination, Plaintiff again exhibited localized tenderness at the epigastric region but otherwise normal results. (AR 314.) Plaintiff's examination results in May 2015 were the same as before. (AR 745–47.)

Plaintiff requested medication refills in November 2016. (AR 715–18.) He complained of episodes of inability to swallow with epigastric pain. (AR 716.) Plaintiff's examination was normal except for localized tenderness at the epigastric region. (AR 716.) His refusal to see a gastrointestinal specialist because he wanted to avoid surgery was noted. (AR 717.) In June 2017, Plaintiff presented for a routine follow-up; his examination was the same as before. (AR 705–08.)

Plaintiff complained of head, neck, and back pain following a car accident in January 2018.

(AR 691–94.) Upon examination, Plaintiff's range of motion in his neck was normal, but he had pain with motion and tenderness. (AR 693.) He had pain with movement in both shoulders, with normal rotator cuff function. (AR 694.) Tenderness was noted on palpation in Plaintiff's glenohumeral joint and Trapezius muscles. (AR 694.) Plaintiff's lumbar spine had no limitation in range of motion, but pain with movement was noted. (AR 694.) Spinous process tenderness was noted on both sides at L4 and L5, and Plaintiff's straight leg raising test was positive. (AR 694.)

In May 2018, Plaintiff presented for a tuberculosis test, which was negative. (AR 687–89.) A physical examination was normal. (AR 689.) Earlier that same month, Plaintiff presented for a well visit and routine health maintenance medical exam with P.A. Moua. (AR 679–86.) He reported that his low back pain from his previous car accident had improved. (AR 682.) Plaintiff's examination was normal, except for localized tenderness at epigastric region. (AR 682–83.) He "refus[ed] referral to GI for Colonoscopy and for evaluation of Gastritis and esophageal disorder." (AR 685.)

In August 2018, Plaintiff presented for a review of recent diagnostic studies. (AR 669–72.) He stated his condition has been stable with medication, but still complained of esophageal and epigastric pain when eating. (AR 671.) Upon examination, Plaintiff again exhibited localized tenderness at the epigastric region but otherwise normal results. (AR 671.)

Plaintiff requested medication refills and disability forms in September 2018. (AR 665–68.) He also complained of cough with green mucous. (AR 666.) Plaintiff's examination was normal as before, except for localized tenderness at epigastric region. (AR 667.) That same month, Plaintiff was evaluated for hearing loss, after complaining of a loss of hearing for six to seven years. (AR 657–58.) He was assessed with mild to moderate sensorineural hearing loss. (AR 658.) He exhibited normal speech and was found to still be able to hear normal-level conversation. (AR 658.)

    **2.**    **Opinion Evidence**

In June 2013, Stephen A. Whaley, M.D., a state agency physician, reviewed the record and

assessed Plaintiff's residual functional capacity (RFC).[4] (AR 78–80, 93–95.) Dr. Whaley found that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions. (AR 53–54, 62–63.) Upon reconsideration in October 2013, another state agency physician, M. Bayar, M.D., reviewed the record and affirmed Dr. Whaley's findings. (AR 72–73, 82–83.)

In March 2015, treating physician John Lubenko, M.D. of North Marks Medical Clinic completed a physical medical source statement form. (AR 336–39.) He opined that Plaintiff could rarely lift and carry 15 pounds; occasionally lift and carry 10 pounds; frequently lift and carry five pounds; and constantly lift and carry less than five pounds. (AR 336-37.) Dr. Lubenko also opined, *inter alia*, that Plaintiff would need to lie down two hours per workday; would need unscheduled breaks every two hours for 15 minutes; would be off task more than 30% per workday; and would be absent three days per month. (AR 337–39.)

Treating physician Carlos Cordoba, M.D., and P.A. Moua completed the same form as Dr. Lubenko in September 2018. (AR 661–64.) They opined that Plaintiff could lift and carry up to 10 pounds rarely; could lift and carry up to five pounds frequently; and could lift and carry less than five pounds constantly. (AR 661.) They also opined, *inter alia*, that Plaintiff would need to lie down four hours per workday; would need unscheduled breaks every 1–2 hours for 15 minutes; would be off task more than 30% per workday; and would have absenteeism at a rate of three days per month. (AR 662–64.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on June 12, 2013,

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

5

and again on reconsideration on November 1, 2013.  (AR 14, 88–93, 96–100, 468.)  Following a hearing, an ALJ issued a written decision on June 19, 2015, finding Plaintiff not disabled.  (AR 14–45.)  Plaintiff appealed the decision to the district court, who, on January 3, 2018, remanded the case for further proceedings to resolve a conflict between the VE's testimony and the language levels required under the Dictionary of Occupational Titles (DOT).  (AR 451–59.)  Upon remand, the Appeals Council directed the assigned ALJ to determine whether Plaintiff was able to perform his past relevant work as actually or generally performed.  (AR 350.)

On January 9 and May 8, 2019, Plaintiff appeared with counsel and testified before the ALJ as to his alleged disabling conditions.  (AR 383–91, 413–36.)  At the first hearing, Plaintiff testified that he previously worked as an apartment manager during 2004 to 2009, and was able to do that job despite his poor English skills by asking questions.  (AR 418–19.)   His gastrointestinal condition (difficulty swallowing food) caused him pain and ultimately resulted in an inability to work.  (AR 423–24, 425.)  Plaintiff stated that his condition has gotten worse.  (AR 424.)  He testified that he does not want to have surgery.  (AR 425.)

At the second hearing, Plaintiff testified that as an apartment manager, he cleaned out apartments after they were vacated and cleaned common areas.  (AR 384–85.)  According to Plaintiff, he could not eat regular meals and it was painful to eat too much.  (AR 385–86.)  When trying to swallow food, he testified it felt "block[ed]" and he would have to throw up.  (AR 386.) Plaintiff testified his doctor told him that his stomach valve is closed.  (AR 386.)  He stated his doctor recommended surgery, but he was not going to do it due to fear.  (AR 386, 389.)  According to Plaintiff, he needed to lie down for more than half the day to relieve his stomach pain, and it affected his strength.  (AR 387.)  Plaintiff testified that the most he could lift was less than five pounds and that he could only stand for 30 minutes at a time.  (AR 387–88.)

A VE also testified at the hearings.  (AR 50–56.)  He testified that Plaintiff had past relevant work as a manager of an apartment house, Dictionary of Operational Titles ("DOT") code 186.167-018, with a light exertional level as generally performed and a specific vocational

preparation (SVP)[5] of 5. (AR 391–92.) According to the VE, as actually performed, the exertional level for the job was medium and an SVP of 3. (AR 392–93.)

The ALJ asked the VE a hypothetical question in which the VE was to consider a person of Plaintiff's age, lack of literacy, and work experience, who is limited to medium work. (AR 393.) The VE testified that such a person could perform Plaintiff's past relevant work only as actually performed, but not as generally performed per the DOT. (AR 395.) The VE further testified that such a person could perform other medium positions under the DOT in the national economy, such as a packer of agricultural produce, DOT code 920.687-134 and SVP 2; kitchen helper, DOT code 318.687-010 and SVP 2; and meat trimmer, DOT Code 525.684-054 and SVP 2. (AR 395–396.) The VE testified that a second hypothetical person who was limited to light work would be unable to perform Plaintiff's past relevant work. (AR 396–96.) The ALJ observed such a person who had such limitations would be deemed disabled under Medical-Vocational Guidelines, 20 CFR, Part 404, Subpart P, Appendix 2 § 202.09. (AR 396.)

**C.   The ALJ's Decision**

In decision dated July 30, 2019, the assigned ALJ once again found that Plaintiff not disabled. (AR 350–62.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 353–362.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2013, and he had not engaged in substantial gainful activity since September 23, 2009, the amended alleged onset date (step one). (AR 353.) At step two, the ALJ found Plaintiff's following impairments to be severe: chronic esophageal disorder with tortuosity and dilation; dysphagia (difficulty swallowing) and gastritis; mild-to-moderate bilateral sensorineural hearing loss; hyperlipidemia; and depressive disorder. (AR 353–54.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 354–55.)

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR [§] 404.1567(c), and [§] 416.967(c), including lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing for six hours; walking for six hours; and sitting for six hours in an eight-hour workday, with the following restrictions: he could frequently balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, scaffolds.

(AR 356–61.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not credible to the extent they were inconsistent with the above residual functional capacity assessment." (AR 361.) Based on this RFC assessment, the ALJ found that Plaintiff was able to perform his past relevant work of apartment manager as actually performed, but not as generally performed per the DOT (step four). (AR 361.) Ultimately, the ALJ concluded that Plaintiff was not disabled from August 25, 1996, through the date of his decision. (AR 361–62.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 28, 2020. (AR 340–46.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

## III.     LEGAL STANDARD

### A.  Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that there is no substantial evidence to support the ALJ's RFC assessment that Plaintiff could perform medium work.  (Doc. 17 at 6–13.)  He points out that "no medical source in the record supports the RFC," and that the ALJ could have sought discovery from physicians, ordered a consultative examination, or adduced testimony from a medical expert at the hearing.  (Doc. 17 at 6–7, 9.)  Instead, according to Plaintiff, the ALJ relied on his lay interpretation

of the medical evidence and erred in failing to develop the record further. (*See* Doc. 17 at 8, 9.) Plaintiff contends that because the ALJ failed to develop the record, substantial evidence does not support the ALJ's RFC determination, and the Court should reverse and award benefits. (*See* Doc. 17 at 10.) Plaintiff further asserts that the ALJ erred in evaluating the medical opinion evidence. (*See* Doc. 17 at 11–13.)

The Acting Commissioner responds that the ALJ's RFC assessment was based on substantial evidence supported from interferences reasonably drawn from the record and should be affirmed. (Doc. 19 at 7–9.) The Acting Commissioner further maintains that no duty to develop the record arose because the ALJ considered all of the evidence in the record, which was neither ambiguous nor inadequate, in assessing Plaintiff's RFC. (*Id*. at 9–10.) Finally, the Acting Commissioner contends that the ALJ's evaluation of the medical opinion evidence was not erroneous, and that, in any event, remand for the payment benefits is not warranted. (Doc. 19 at 10–13.)

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.    The ALJ Had No Duty to Develop the Record**

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford,* 950 F.3d at 1156; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). As an initial matter, Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. To the contrary, when the ALJ asked the Plaintiff's attorney at the hearing whether the record was complete, he responded "I believe so." (AR 412.) *See Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete). *See also Randolph v. Saul*, 2:18-cv-00555-CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020) (same). In the absence of any inadequacy or ambiguity in the record, which Plaintiff has not shown, the ALJ had no duty to develop it further.

**B.    The ALJ Did Not Err in Formulating Plaintiff's RFC**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the

11

relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Further, an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Plaintiff's primary criticism of the ALJ's RFC assessment is his claim that it was the result of the ALJ improperly imposing his own lay interpretation of the medical evidence. (*See* Doc. 17 at 7–8.) This argument is unavailing. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when he assesses an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

As set forth more fully below, the ALJ considered the opinions of the treating and State agency physicians and properly assigned them "little weight," finding them inconsistent with the longitudinal record. (AR 359–60.) The ALJ then, as he is charged to do, interpreted that record and assessed Plaintiff's RFC based thereon, specifically noting Plaintiff's consistently normal physical examination findings (*see* AR 309, 314, 667, 671, 682–83, 689, 706, 716, 746) and his work history, which established that he performed medium exertional work as an apartment manager for over ten years with the same purportedly disabling impairments (*see* AR 148, 179, 196, 242, 249, 384–85, 418).[6] As to the latter, evidence of Plaintiff's ability to work with

---

[6] The Acting Commissioner argues that the fact that Plaintiff declined surgery is substantial evidence supporting the RFC assessment. (*See* Doc. 19 at 8–9.) While it is not clear that the ALJ based the RFC on this evidence, to the extent he did, it was erroneous. While unexplained or inadequately explained noncompliance with treatment may be

impairments reasonably suggests that the impairments are not totally disabling. The only evidence that Plaintiff's condition worsened since his alleged onset date was his discounted testimony, which he does not challenge. *See, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).[7] *See Kenneth C. v. Comm'r of Soc. Sec.*, No. C18-5773 RAJ, 2019 WL 4261156, at *4 (W.D. Wash. Sept. 9, 2019) ("Disability is defined as the inability to work due to physical or mental impairment. The fact that Plaintiff worked while he had the same back impairment, as shown by a lack of 'objective worsening,' shows that the back impairment is not disabling), *aff'd sub nom. Cornellier v. Saul*, 834 F. App'x 321 (9th Cir. 2020). *See also Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (ability to hold two previous jobs undermined claim of disability); *Gregory v. Bowen*, 844 F.2d 664, 666–67 (9th Cir. 1988) (ALJ's determination that claimant was not disabled supported by substantial evidence that the condition of claimant's back had remained constant for several years and had not prevented them from working over that time).

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. *See, e.g., Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). *See also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner), §§

---

considered as evidence of non-disability, *see Molina*, 674 F.3d at 1113-14, such treatment must be "expected to restore [the claimant's] ability to work," *see* 20 C.F.R. §§ 404.1530(a), 416930(a). It does not include treatments "merely recommended or suggested" by a medical source. *See, e.g., Maxwell v. Astrue*, No. 1:11-CV-01509 SMS, 2012 WL 4035538, at *6 (E.D. Cal. Sept. 12, 2012) (finding record showed colectomy procedure was recommended but not prescribed and claimant's decision not to undergo procedure was not a valid reason to discredit their testimony); *Aguirre v. Astrue*, No. ED CV 08-1176PLA, 2009 WL 3346741, at *6 (C.D. Cal. Oct. 14, 2009) (finding ALJ erred by discrediting Plaintiff's testimony for noncompliance with treatment when she refused treatment which was never actually prescribed). Here, the evidence establishes that surgery was merely recommended to Plaintiff, not prescribed (AR 249, 257, 305, 309, 386, 389, 717), and thus his unwillingness to undergo a recommended surgery does not constitute failure to follow prescribed treatment. *See Overacker v. Astrue*, No. CV-11-3017-CI, 2012 WL 5993753, at *5 (E.D. Wash. Nov. 30, 2012) (noting it is improper to deny benefits on the basis of declined treatment when treatment is only suggested rather than a prescribed course of treatment). Such error is nevertheless harmless in light of the other substantial evidence in the record supporting the RFC. *See Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir. 2008).

[7] The Court deems the ALJ's unchallenged credibility determination binding. *See, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).

404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). To the extent Plaintiff is advocating for an alternative interpretation of the evidence in the record, the Court will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Molina*, 674 F.3d at 1110. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**C.    The ALJ Appropriately Assessed the Opinions of Drs. Lubenko and Cordoba and P.A. Moua**

**1.    Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [their] interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick*, 157 F.3d at 725). "The ALJ must do more

than state conclusions. [They] must set forth [their] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, a treating physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157[8], except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating professional. *Lester*, 81 F.3d at 831.

**2. Analysis**

It is uncontested that Drs. Lubenko and Cordoba and P.A. Moua from the North Marks Medical Clinic treated Plaintiff, and thus are considered a treating sources. Dr. Lubenko opined, in a medical source statement form, that Plaintiff could rarely lift and carry 15 pounds; occasionally lift and carry 10 pounds; frequently lift and carry five pounds; and constantly lift and carry less than five pounds. (AR 336-37.) Dr. Lubenko also opined, *inter alia*, that Plaintiff would need to lie down two hours per workday; would need unscheduled breaks every two hours for 15 minutes; would be off task more than 30% per workday; and would be absent three days per month. (AR 337–39.) Dr. Cordoba and P.A. Moua completed the same form, and similarly opined that Plaintiff could lift and carry up to 10 pounds rarely; could lift and carry up to five pounds frequently; and could lift and carry less than five pounds constantly. (AR 661.) They also opined, *inter alia*, that Plaintiff would need to lie down four hours per workday; would need unscheduled breaks every 1–2 hours for 15 minutes; would be off task more than 30% per workday; and would have absenteeism at a rate of three days per month. (AR 662–64.) These opinions are contradicted by the medical opinion evidence of State agency physicians Drs. Whaley and Bayar, who found that Plaintiff could

---

[8] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. §§ 404.1527, 416.927.

perform light work. (AR 53–54, 62–63, 72–73, 82–83.)  Thus, the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting the opinions.

In rejecting the opinions, the ALJ found they were inconsistent with progress notes, treatment notes, and other evidence of record.  (AR 360.)  An ALJ may discount an examining physician's opinion that is not supported by the medical record, including their own treatment notes.  *See Valentine*, 574 F.3d at 692–93 (contradiction between physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Bayliss*, 427 F.3d at 1216 (same); *Batson,* 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ properly rejected medical opinion where doctor's opinion was contradicted by his own contemporaneous findings); *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion.").  Here, although the treaters opined that Plaintiff had significant limitations in lifting, carrying, remaining on task, and workplace attendance (AR 336–39, 661–41), the ALJ noted (AR 357–60) that Plaintiff's physical examination records from North Marks Medical Clinic for the period of May 2015 to September 2018 showed at most localized epigastric tenderness and were otherwise consistently normal (AR 309, 314, 667, 671, 682–83, 689, 706, 716, 746).

To the extent that Plaintiff relies on *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988), for the proposition that the ALJ must discuss the evidence supporting a conclusion with enough specificity, s*ee* Doc. 17 at 12, *Embrey* is distinguishable.  In *Embrey*, the court held that an ALJ's conclusion that objective findings do not support a treating physician's opinion is alone not a sufficiently specific reason to reject that opinion.  849 F.2d at 421–22.  Here, the ALJ did not merely conclude that the opinions were inconsistent; he instead identified the specific examination records showing that, contrary to the treaters' assessments, Plaintiff can perform greater-than-sedentary work.  (*See* AR 360.)  In fact, as observed above, there is substantial evidence in the record that Plaintiff can perform at least medium work (*see* AR 148, 179, 196, 242, 249, 384–85, 418).

In sum, the ALJ identified ample medical evidence in the record that undermines the opinions that Plaintiff is capable of only sedentary level work.  This is a specific, legitimate reason supported by substantial evidence for discounting this opinion.  *See Magallanes*, 881 F.2d at 751; *see also Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957.  As the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner, it will not disturb the ALJ's finding on this basis.  *See Robbins*, 466 F.3d at 882; *Thomas*, 278 F.3d at 954 (Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

## V.   CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: __**November 29, 2021**__         /s/ *Sheila K. Oberto*          
UNITED STATES MAGISTRATE JUDGE

17